IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   Criminal No. 08-00347-KD-M |
| | * |
| CHARLES THOMAS, | * |
|     Defendant. | * |

**ORDER**

This matter came before the Court on August 3, 3009 for a hearing to determine whether involuntary medication of the Defendant with anti-psychotic medication is necessary pursuant to Sell v. United States, 539 U.S. 166 (2003), to restore him to competency to stand trial.[1] For reasons more fully set forth in open court, the Court finds as follows.

**I.   Background**

On October 30, 2008, Defendant Charles Thomas ("Defendant") was indicted on one count in the Southern District of Alabama for violations of Title 18 United States Code, Section 922(g)(1). (Doc. 1).  On November 20, 2008, the Government filed a motion for a psychiatric exam of Defendant. (Doc. 9).  In that motion, the Government stated that the Defendant had appeared before U.S. Magistrate Judge Bert W. Milling, Jr., for an initial appearance and arraignment on November 12, 2008, but that the pretrial services officer advised the Court that he was unable to communicate with the Defendant to determine necessary background information. (Id.) Assistant Federal Public Defender Chris Knight was appointed to represent the Defendant and to assist the Court in

---

[1] Two witnesses from the U.S. Medical Center for Federal Prisoners in Springfield, Missouri where the Defendant was referred for examination – Dr. Christina A. Pietz (Staff Psychologist) and Dr. Robert G. Sarrazin (Chief of Psychiatry) – appeared and testified via video conferencing. The Defendant appeared in person at the hearing with counsel.

determining the Defendant's current mental status. (Id.) Mr. Knight determined that in parallel proceedings in state circuit court, a mental evaluation had been ordered and was performed by Dr. Doug McKeown, who advised that in his opinion, Defendant suffers from a major mental disorder and is incapable of participating in the judicial process at this time; he recommended that the Defendant be sent to the state facility for further evaluation and treatment. (Id.) On November 21, 2008, the Defendant filed a response stating that he had no objection to the Government's motion, but requested that Dr. Thomas S. Bennett, Ph.D. conduct the psychological evaluation. (Doc. 12). On December 1, 2008, Judge Milling granted the Government's motion and ordered the Defendant to undergo an evaluation after finding that there "is reasonable cause to believe that Defendant may be so mentally incompetent as to not be able to stand trial or to not be held responsible for Defendant's alleged criminal conduct at the time the offense was committed." (Doc. 13 at 2).

In April 2009, this Court was notified that the Defendant had completed the psychiatric evaluation and so on April 27, 2009, held a competency hearing. (Docs. 18, 19, 20). As a result of the hearing (during which the Court determined that Defendant was incompetent to stand trial), on April 28, 2009, the Defendant was committed to the custody of the Attorney General or an authorized representative pursuant to Title 18 U.S.C. § 4241(d) for hospitalization and treatment in a suitable facility for a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future defendant will attain the capacity to permit the proceeding to move forward. (Doc. 20). The Court subsequently received a forensic evaluation update from Dr. Christina A. Pietz (Staff Psychologist) of the U.S. Medical Center for Federal Prisoners in Springfield, Missouri (where the Defendant was referred for examination) which indicated that the Defendant is not mentally competent to stand trial and that

he is unlikely to be restored to competency in the near future unless he can be treated with anti-psychotic medication. (Doc. 21). The forensic evaluation stated further, that the Defendant is consistently refusing to take anti-psychotic medication voluntarily. (Id.) Accordingly, the Court scheduled a Sell v. United States, 539 U.S. 166 (2003) hearing pursuant to 18 U.S.C. § 4247(d), to determine whether involuntary medication of the Defendant is necessary. (Docs. 22, 23).

**II.     Discussion**

A prisoner has a constitutionally protected Fifth and Fourteenth Amendment liberty interest in remaining free from unwanted medical treatment and cannot be forced to accept medication without due process of law. Washington v. Harper, 494 U.S. 210, 221 (1990) (recognizing a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs). However, the U.S. Supreme Court in Sell v. United States, 539 U.S. 166 (2003) subsequently held that a pre-trial detainee's liberty interest in remaining free from the unwanted administration of anti-psychotic drugs could be overcome if certain factors exist. Notably, if a defendant refuses anti-psychotic medication, a court must evaluate a forced course of treatment under Sell, 539 U.S. 166, which sets forth four factors for consideration: 1) whether there is an important governmental interest at stake in bringing to trial an individual accused of a serious crime; 2) whether treatment is substantially likely to restore defendant to competency and whether treatment is substantially unlikely to have serious side effects which would interfere with the defendant's ability to assist his attorney in conducting the offense; 3) whether the treatment is necessary to further the government interest at stake, and whether there are less intrusive alternatives to achieve the same result (*i.e.*, to restore competency); and 4) whether treatment with anti-psychotic medication is medically appropriate. See generally U.S. v. Brauner, 2008 WL 2635527 (S.D. Fla. Jun. 30, 2008); U.S. v.

Milliken, 2006 WL 2945957 (M.D. Fla. Jul. 12, 2006). The relevant findings of the Court must be supported by clear and convincing evidence.[2] See, e.g., Milliken, 2006 WL 2945957, *6.

As to the **first** factor, the Defendant was indicted for the serious crime of being a felon in possession of a firearm, under which his past criminal history as a violent offender is relevant. The Government has an important interest in prosecuting cases involving possession of a firearm, particularly when such cases involve a defendant with a violent history. Additionally, both Dr. Pietz and Dr. Sarrazin testified that there are concerns that the Defendant would be a danger to himself or others in his current mental state. Thus, the Court finds by clear and convincing evidence that there is an important government interest at stake in bringing this Defendant to trial for the alleged possession of a firearm which occurred during a robbery.

Regarding the **second** factor, based upon the testimony of the two doctors, the involuntary administration of anti-psychotic medication is substantially likely to render the Defendant competent to stand trial, and moreover, the drugs administered are substantially unlikely to have side effects that will interfere significantly with his ability to assist counsel and render the trial unfair. Sell, 539 U.S. at 181. At the hearing, Dr. Sarrazin and Dr. Pietz both testified that the Defendant is currently incompetent to stand trial and that in light of his medical condition, treatment with anti-psychotic medications is medically appropriate and alternative treatments would not be effective to restore him

---

[2] Section 4241(d) provides, in relevant, part as follows: "[d]etermination and disposition.--If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General." While the Court recognizes that the statute sets forth a preponderance of evidence standard for determinations of a defendant's mental competency, and although the Eleventh Circuit has not yet addressed the standard of proof applicable to a Sell determination stemming from same, a review of the case law indicates that the majority of circuit courts have applied the clear and convincing standard when assessing the four Sell factors (namely, the Second, Third, Fourth, Fifth, Sixth, Ninth, Tenth and DC Circuits).

to competency. The doctors further testified that treating the Defendant with anti-psychotic medication, whether voluntary or involuntary, would be substantially likely to render him competent to stand trial. Both doctors testified that the Defendant has consistently refused such medication. Both doctors also testified as to the proposed treatment plan for the Defendant and described the types of drugs they would use, as well as indicated that it was substantially likely that this medication could help render him competent without side effects that would interfere with the fairness of his trial. Thus, the Court finds by clear and convincing evidence that there is a substantial likelihood that the Defendant's planned treatment with anti-psychotic medication will significantly further the Government's interest by being substantially likely to render the Defendant competent to stand trial and by being substantially unlikely to have interfering side effects. See, e.g., Milliken, 2006 WL 2945957, *12.

Concerning the **third** factor, based on the testimony of Dr. Sarrazin and Dr. Pietz, involuntary medication of the Defendant is necessary to further the government interest at stake, less intrusive treatments are unlikely to achieve substantially the same results, and there does not appear to be any available alternatives for treatment to achieve the same result (competency). Sell, 539 U.S. at 181. The doctors testified that the Defendant adamantly refuses to take his recommended medication because he believes that he is sound. The doctors also testified that alternative or less intrusive treatments would not achieve competency. Thus, the Court finds by clear and convincing evidence that the involuntary medication of the Defendant is necessary.

As to the **fourth** factor, based on the testimony of Dr. Sarrazin and Pietz, the forced medication of anti-psychotic drugs is in the Defendant's best medical interest in light of his current mental condition. Sell, 539 U.S. at 181. At the hearing, both doctors testified that such treatment

5

is medically appropriate for the Defendant given his condition, and that if not treated, his condition may worsen. Thus, the Court finds by clear and convincing evidence that treatment of the Defendant with anti-psychotic medication is medically appropriate.

Finally, the Court considers the fact that at the Defendant's involuntary medication hearing, counsel for the Defendant indicated that the Defendant's privately retained psychologist, Dr. Thomas Bennett, concurred with the findings of Dr. Sarrazin and Dr. Pietz. Moreover, no evidence was presented by the Defendant to contradict their testimony and/or recommendations for treatment.

## III.     Conclusion

Having considered all four Sell factors and the Defendant's current incompetency to stand trial, the Court finds that Defendant be involuntarily medicated with anti-psychotic drugs. The Court finds that the Defendant's need for treatment and the government's interest in having him restored to competency are sufficiently important to overcome his constitutional liberty interest in refusing such treatment. Accordingly, it is **ORDERED** that pursuant to 18 U.S.C. § 4241(d)(1), Defendant is committed to the custody of the Attorney General for hospitalization and treatment, including involuntary anti-psychotic medication if necessary and periodic monitoring for side effects, at a suitable BOP facility.[3] This commitment shall expire four months from the date of this Order. If additional time is needed, the BOP, the Government, or the Defendant can request an extension under Section 4241(d)(2). It is further **ORDERED** that the Attorney General, through the U.S. Attorney's office, shall file monthly reports with the Court concerning the Defendant's status, and provide copies to counsel of record. Additionally, if there is a change in circumstances,

---

[3] The Court presumes that the Defendant will be hospitalized and treated at the facility in Springfield, Missouri, where he has already undergone treatment and evaluation by Dr. Pietz and Dr. Sarrazin, and that he will continue do so.

the Defendant or the Government may move for an order amending Defendant's commitment.

The Government shall provide a copy of this Order to the proper authorities at the Federal Medical Center in Springfield, Missouri.

**DONE** and **ORDERED** this the **4th** day of **August 2009.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**